[No. 539-3.    Division Three.    June 12, 1973.]

CLAYTON LYDA et al., *Respondents*, v. THE PORT OF WALLA WALLA et al., *Defendants*, SIME CONSTRUCTION Co., et al., *Appellants*.

*Carl G. Sonderman* (of *Loney, Westland, Raekes, Rettig & Sonderman*), for appellants.

*D. Wayne Campbell* (of *Campbell & Johnston*), for respondents.

McINTURFF, J.—Plaintiff Northwest Enterprises, a subcontractor from Lewiston, Idaho, brought this action against the defendant Sime Construction Company, general contractor, for breach of contract. From a judgment for plaintiff, defendants appeal.

In 1966 the Port of Walla Walla purchased fill material from the federal government through the Corps of Engineers. According to agreement, the port was to excavate fill material from the bed of the Snake River, with the removal and disposal of the material to be accomplished according to specifications prepared by the Corps of Engineers. The material was to be used as landfill for the development of an industrial park owned by the port near Burbank, Washington. The United States sold the material to improve its Hood Park boat basin.

In 1970 the Port of Walla Walla entered into a contract with Sime Construction Company of Kennewick to excavate material. Sime Construction subcontracted the work to plaintiffs Clayton Lyda and Kenneth Morrison, d/b/a Northwest Enterprises, of Lewiston, Idaho.

In its findings of fact, to which no error is assigned, the trial court found:

### IV.

In September, 1970, the plaintiff Clayton Lyda [Northwest Enterprises] and Mr. A. R. Sime, president of Sime Construction Company met and discussed the performance of the work. Mr. Lyda was interested in taking over the work and performing in accordance with the prime contract, and the parties negotiated the terms and conditions under which this might be accomplished.

### V.

That at this time the plaintiff Clayton Lyda made certain representations to the president of the defendant as follows:

(a) That he, Clayton Lyda, was sufficiently experienced and knowledgable to adequately and properly perform the work in a good and workmanlike manner.

(b) That he had sufficient financial resources with which to carry on and conduct the work and perform in accordance with his contract agreement.

(c) That he had adequate and sufficient equipment to perform the job, and in particular, 4 Euclid belly dumps 20-yards size.

(d) That he would furnish a payment and performance surety bond guaranteeing the performance of contract and the payment of all proper bills against the job.

(e) Clayton Lyda furnished a written financial statement of his financial condition as of September 5, 1970.

## VI.

That the above representations were relied upon by the defendant Sime Construction Company, and as a result thereof, the defendant awarded a subcontract agreement to the plaintiff under date of October 9, 1970,

. . .
. . .

## IX.

That the plaintiff brought four Euclid belly dumps to the job which were 13 yards in size and of marginal function because of their age and size.

## X.

That the evidence submitted indicates that the plaintiff had very little background experience or knowledge necessary to accomplish even the most rudimentary efforts in this particular field of endeavor, and was having apparent financial difficulties in connection with another job being performed for the S.S. Mullen Company.

## XI.

As a result of the handicaps under which the plaintiff was attempting to work, the job progressed very slowly and inefficiently up until the first of December, 1970, and thereafter very little was accomplished.

## XII.

That the defendant Sime Construction Company was contacted by an unpaid major supplier, which caused an investigation to be made, leading defendant Sime Construction Company to believe that large bills were unpaid; a major area of liability existed through absence of

industrial insurance; the large asset listed regarding the Mullen contract was nonexistent; that Mullen was nursing and payrolling the plaintiff's subcontract in an effort to avoid problems; that the performance and payment bond had not been furnished, although requests for it had been made repeatedly; and the defendant had joined with the plaintiff in claiming more material than actually had been moved for payment under the prime contract.

## XIII.

That acting upon the advice of counsel, the defendant Sime Construction Company served plaintiff with a written notice directing the plaintiff to cure certain specified defects within 72 hours or the defendant Sime Construction Company would have to take over the job.

## XIV.

Upon receiving notification, the plaintiff immediately moved off the job and made no attempt to comply with the requirements set forth in said notice, and in fact the Court finds that the amount of time in the notice given to plaintiff was not a material matter inasmuch as the plaintiff concedes that he could not have corrected the deficiencies regardless of the amount of time; that just being given more time would not have permitted him to correct the deficiencies in his performance in accordance with the subcontract agreement.

After completing 80 percent of the work on the contract plaintiff moved off the job. Defendant then completed the job under the original contract and received payment from the Port of Walla Walla. Plaintiff did not receive payment for the work it had done under the subcontract, and brought this action.

Defendant moved at the outset to dismiss plaintiff's claim because plaintiff had failed to obtain a contractor's license, and in all respects had failed to comply with RCW 18.27.080 which provides:

> No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor and held a current and valid

certificate of registration at the time he contracted for the performance of such work or entered into such contract.

The trial court granted judgment for the plaintiff and held that the exemption under RCW 18.27.090(7) was applicable. It reads:

This chapter shall not apply to:

. . .

(7) Any construction, alteration, improvement, or repair carried on within the limits and boundaries of any site or reservation under the legal jurisdiction of the federal government;

The sole issue we reach on this appeal is whether an out-of-state contractor who has made no attempt to comply with the contractor registration laws of RCW 18.27 may bring himself within the exemption of RCW 18.27.090 by showing incidental federal jurisdiction and therefore recover for work performed.

RCW 18.27.080 bars an action by an unlicensed contractor. The purpose of this legislation is to prevent the victimizing of a defenseless public by unreliable and incompetent contractors. *See Suburban Fuel Co. v. Lamoreaux,* 4 Wn. App. 179, 480 P.2d 216 (1971); *Stewart v. Hammond,* 78 Wn.2d 216, 471 P.2d 90 (1970); *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 486 P.2d 1080 (1971). The act is designed to assure fiscal responsibility of contractors. There is little doubt that under the facts of the instant case the legislation was aimed directly at a party like the present plaintiff who has ventured into this state, contracted with citizens of this state, and lacked the necessary experience, financial ability, knowledge, and competency to adequately perform the work contracted for.

As noted in *Murphy v. Campbell Inv. Co., supra* at 421:

There can be little doubt as to the legislatively intended "design" of RCW 18.27, relating to the registration of contractors. We have recently stated that:

RCW 18.27, *et seq.,* was designed to prevent the victimizing of a defenseless public by unreliable, fraudulent and incompetent contractors, many of whom oper-

ated a transient business from the relative safety of neighboring states.

Under the facts advanced in the instant case we find that reasoning compelling.

■ In holding RCW 18.27.090 (7) applicable the trial court reasoned that the bulk of the fill area was obtained from a construction site under the jurisdiction of the federal government. In his argument in support of judgment plaintiff urges that since the excavation work was being done in the bed of the Snake River, which is a navigable stream under the jurisdiction of the federal government, the exemption should apply.

From the evidence it is clear that title to the fill material was vested in the port district. In a letter dated July 19, 1966 the Corps of Engineers advised the port that title to the property had vested in the port. We have found no cases, either in Washington or other jurisdictions, interpreting the exemption set forth in subsection (7) of RCW 18.27.090. Under the supremacy clause of the United States Constitution,[1] states do not have the power to regulate projects over which the federal court has jurisdiction or control. It, therefore, follows that one primary legislative purpose in drafting the exemption into the statute was to avoid conflicts between the state and federal laws. Under the facts in the instant case there is no allegation or evidence of a conflict between the federal government and this state. The federal government's role in the contract between Sime Construction and the plaintiff was merely incidental. The federal government had sold its interest in the fill material to the port. It retained only a passive interest in the fill material and in the contract between the two parties. Whether the subcontract was performed or not does

---

[1]The supremacy clause of the United States Constitution, article 6, paragraph 2 provides: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."

not affect the government for their contract was with the port. This is not a sufficient basis to assert the exemption in the instant case.

█ Relying on *Ferris v. Snively*, 172 Wash. 167, 19 P.2d 942 (1933), plaintiff argues that the contractors' registration law is not applicable between contractors. In *Snively*, the Supreme Court allowed a law clerk to recover for legal work performed for an attorney. However, the statute in *Snively* did not prohibit the bringing of an action for collection of compensation. On the other hand, RCW 18.27 specifically prohibits the bringing of any action. Plaintiff urges that the registration statute may not be asserted as a defense by a fellow-contractor because the statute was designed to protect the general public; another contractor is not a member of the protected class. We disagree. A general contractor is a member of the general public and is equally entitled to the protection of the registration statute.

Having concluded that the plaintiff failed to bring himself within the exemption statute, we need not reach the issues raised on the cross-appeal.

Judgment of the trial court is reversed.

GREEN, C.J., and MUNSON, J., concur.

Petition for rehearing denied July 5, 1973.

Review denied by Supreme Court August 28, 1973.